U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MAR - 4 2020

CLERK U.S. DISTRICT COURT
By: _____
         Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:20-MJ-__178__ |
| JUSTIN EARL SHARP (01) | |

## CRIMINAL COMPLAINT

**Alleged Offense:**

I, Special Agent Michael Pederson, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

On or about May 19, 2018, in the Fort Worth Division of the Northern District of Texas, defendant **Justin Earl Sharp,** knowingly possessed ammunition, to wit: four black Critical Defense .410 shotgun shells, made by Hornady, and two green Remington-Peters .410 shotgun shells, in and affecting interstate and foreign commerce, and did so knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

**Background:**

I, Special Agent Michael Pederson, hereafter identified as your Affiant the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

1. I am a Special Agent with the Department of Homeland Security (DHS) - Homeland Security Investigations (HSI) assigned to the Office of the Special Agent-in-Charge, Dallas, Texas. This complaint is based on the following facts gathered through my investigation conducted in coordination with the Fort Worth (Texas) Police

Complaint - Page 1

Department's Major Case/Human Trafficking Investigations Unit. Our investigation included the interviews of several victims and witnesses, investigative techniques such as administrative subpoenas and judicial search warrants, and through reports or other information relayed to me by other law enforcement agencies including, but not limited to: The Fort Worth Police Department and the Bureau of Alcohol, Tobacco & Firearms (ATF).

2. I am currently assigned to the Human Trafficking and Human Smuggling Investigations Group which is a member of the North Texas Trafficking Task Force (NTTTF), and attached to the Fort Worth Police Department Major Case/Human Trafficking Investigations Unit. I have been a Special Agent with DHS since 2010, and I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a federal law enforcement agent since 2004. I have completed the Criminal Investigator Training Program (CITP) and ICE Special Agent Training (ICESAT) program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I have been trained and am responsible for conducting criminal investigations of alleged violations of federal law, with a focus on human trafficking.

3. As a criminal investigator for HSI, I have gained extensive training and experience in conducting large scale complex investigations to include investigations in the area of immigration law, gang investigations and human trafficking/human smuggling operations. I have been involved in the interviewing and debriefing of defendants, informants, and witnesses and other persons who have personal knowledge of transnational street gangs, human trafficking/smuggling and/or who have personal knowledge of the amassing, spending, converting, transporting, distributing, laundering, and/or concealing of the proceeds of human trafficking/smuggling. I have testified in judicial proceedings and prosecutions for violations of laws concerning crimes of violence to include the trafficking of persons, organized criminal activity/racketeering, transnational street gangs, human smuggling, and narcotics smuggling. I have also investigated or participated in investigations including but not limited to, unlawful possession of firearms and money laundering. I routinely work with other law enforcement agencies on a cooperative basis; through these contacts, I have gained experience and knowledge in the investigation and prosecution of large scale criminal organizations, human traffickers and dismantling human trafficking organizations.

4. I have personally participated in this investigation since May 19, 2018 and have obtained the facts set forth in this affidavit through my participation in the investigation described below from oral and written reports of other law enforcement officers, and from records, documents and other evidence obtained during this investigation. I have also relied on additional information provided by other law

enforcement organizations including but not limited to: Fort Worth (Texas) Police Department and Bureau of Alcohol, Tobacco and Firearms (ATF). Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

5. This affidavit sets forth facts and suggests reasonable inferences from those facts, establishing that there is probable cause to believe that on or about May 19, 2018, in the Northern District of Texas Fort Worth Division, **Justin Earl Sharp**, committed the offense of Prohibited Person in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

**Probable Cause:**

6. On May 19, 2018 **Justin Earl Sharp** was the subject of numerous calls for service to local police agencies in the cities of Ft. Worth and White Settlement, Texas in reference to him allegedly being intoxicated and creating a disturbance at local businesses. Further, it was alleged that **Sharp** was threatening and assaulting citizens with a handgun and had stolen ammunition from a local sporting goods store.

7. The White Settlement officers, who arrived on scene at the sporting goods store to investigate the theft of the ammunition, immediately recognized a photograph of **Sharp** and began to check the area for his vehicle, a red, Dodge Ram Pickup.

8. A short time later, Fort Worth Police Officers arrived at a nearby café to investigate a disturbance and possible domestic violence incident that was later linked to **Sharp**. **Sharp** had earlier arrived at the café, the work place of his former girlfriend, and

assaulted his former girlfriend and threatened to kill everyone in the café. **Sharp**'s girlfriend also told the officers that **Sharp** was concealing a homemade handgun in his waistband. She further described the handgun as orange and wrapped in black tape. Witnesses told officers that **Sharp** and another male departed the area in **Sharp**'s truck.

9. While those same Fort Worth Police Officers were on the scene at the café, they heard a radio broadcast at a nearby liquor store business of a person matching **Sharp**'s description, being in possession of a firearm. An officer conducted a system check of **Sharp**'s license plate and proceeded to **Sharp**'s last known address.

10. Several witnesses told officers that responded to the liquor store that **Sharp** had assaulted several patrons inside the liquor store and had fired a round at another patron outside the liquor store in the parking lot.

11. The other person who was with **Sharp**, later identified as Christopher Kelly, was left at the liquor store by **Sharp** when he fled. Kelly later told police that **Sharp** stated that he was going to get into a gunfight with police officers. Kelly also told officers that **Sharp** was going to make officers kill him because he was upset over the breakup with his girlfriend.

11. Other White Settlement Police Officers responded to another call of a person with a gun at a nearby food mart, but upon arrival they saw **Sharp**'s vehicle exiting the parking lot. The officers immediately activated their emergency lights and a vehicle pursuit ensued. Over the next ten to fifteen minutes, **Sharp** was pursued in his

vehicle by White Settlement and Fort Worth Police Officers. At one point, officers used a tire deflation device, in hopes of ending the pursuit.

12. At approximately 7:01 p.m., **Sharp** stopped his truck in the middle of the street, in front of 8412 Whitney Drive. Officers positioned their vehicles behind **Sharp**'s vehicle. A short time later, **Sharp** turned to the left in the driver seat of his vehicle, put his right hand, which was holding the handgun, outside of the truck. **Sharp** pointed his handgun directly at the officers and pulled the trigger, firing the handgun. Several officers returned fire, but **Sharp** drove away from the officers, toward the intersection of Whitney Drive and Mirike Drive, where another Officer had parked and was getting ready to deploy another tire deflation device.

13. The officer heard what he quickly recognized as gunfire and retrieved his rifle. The officer noted that **Sharp** was driving his vehicle directly toward him and a citizen at a high rate of speed. To protect the citizen and himself, the officer fired several rounds at **Sharp** as he passed within mere feet of where he and the citizen were located.

14. The officer noted that he saw **Sharp**'s head slump forward and saw the vehicle move to and strike a curb along the roadway. At that point, the other officers converged on **Sharp**'s vehicle and a short standoff ensued. For several minutes, the officers attempted to contact **Sharp** over police vehicle public address systems without any results. The vehicle started moving again, sped across an intersection and crashed into a home. A Fort Worth Police Officer then used his police vehicle to pin **Sharp**'s truck against the home, ending the pursuit.

15. Officers again attempted to elicit a response from **Sharp**, without results. An Emergency Action Team (EAT), comprised of Fort Worth Police Officers, employing a ballistic shield and an array of lethal and less than lethal force options approached **Sharp**'s vehicle on foot and made entry into the cab of the truck in an attempt get gain **Sharp**'s compliance. **Sharp** did not comply, a TAZER was deployed, and he was eventually removed from the vehicle. **Sharp** was unresponsive and a Fort Worth Police Tactical Medic began to treat **Sharp** for his injuries, including what appeared to be a gunshot wound to the back of the head.

16. A Firearms Trace Summary was unable to be completed by ATF as the weapon was manufactured by placing a pipe into the chamber of a commercially available flare gun. However, several .410 shotgun shells were recovered from inside **Sharp**'s vehicle and from **Sharp**'s person. Namely, recovered from **Sharp**'s left front pants' pocket were four black Critical Defense .410 shotgun shells, made by Hornady, and two green Remington-Peters .410 shotgun shells. Those shotgun shells were sent to the Bureau of Alcohol, Tobacco, & Firearms for an Interstate Nexus Determination and were found to have been manufactured outside the State of Texas and had to have travelled in interstate commerce to be present in the State of Texas.

18. **Justin Earl Sharp** possessed this ammunition knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense. A query of **Sharp**'s criminal history reflects that he's been convicted of a the following offenses: 1) evading arrest in June of 2012; 2)

possession of a controlled substance in April of 2015; and 3) Unlawful Possession of a Firearm by Felon in September of 2017.

## CONCLUSION

19. Based on the foregoing facts and circumstances I respectfully submit that there is probable cause to believe that on or about May 19, 2018, within the Northern District of Texas – Fort Worth Division, **Justin Earl Sharp** committed the offenses of Prohibited Person in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Michael Pederson
Special Agent
Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn before me this 4th day of March, 2020 at ____ a.m./p.m. in Fort Worth, Texas.

JEFFREY CURETON
UNITED STATES MAGISTRATE JUDGE

Complaint - Page 8